1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  JESSE FLORES,                          No.  2:14-cv-2650 AC

12              Plaintiff,

13        v.                               ORDER

14  CAROLYN W. COLVIN, ACTING
    COMMISSIONER OF SOCIAL
15  SECURITY,

16              Defendant.

17

18
19        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

20  ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under

21  Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that

    follow, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's
22
    cross-motion for summary judgment, and remand this matter for further proceedings.
23
    ////
24

25  _____
    [1]  SSI is paid to financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept.
26  of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003)
    ("Title XVI of the Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of
27  benefits for aged, blind, or disabled individuals, including children, whose income and assets fall
    below specified levels . . .").
28

# I.  PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on August 19, 2011.  Administrative Record ("AR") 17 (Decision).[2]  The disability onset date was alleged to be December 1, 2002, and was later amended to August 18, 2011.  Id.  The applications were disapproved initially and on reconsideration.  Id.  On April 2, 2013, ALJ L. Kalei Fong presided over the hearing on plaintiff's challenge to the disapprovals.  AR 33-82 (transcript).  Plaintiff, who was represented by attorney Stephen Valizan, was present and testified at the hearing.  Thomas Sartoris, a vocational expert, also testified at the hearing.

On April 2, 2013, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 14-27 (decision), 28-31 (exhibits).  On September 19, 2014, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-5 (decision, additional evidence).

Plaintiff filed this action on November 13, 2014.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 15, 16.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 20 (plaintiff's summary judgment motion), 24 (Commissioner's summary judgment motion), 25 (plaintiff's reply).

# II.  FACTUAL BACKGROUND

Plaintiff was born on February 4, 1971, and accordingly was 40 years old, and thus a "younger" person under the regulations, when he filed his application.[3]  AR 26.  Plaintiff has an 8th grade education, which is a "limited" education under the regulations.[4]  AR 26.

# III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."

---

[2]  The AR is electronically filed at ECF Nos. 19-3 to 10-20 (AR 1 to AR 860).
[3]  See 20 C.F.R. § 416.963(c) ("Younger person").
[4]  See 20 C.F.R. § 416.964(b)(3) ("Limited education").

1   Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

2   Secretary as to any fact, if supported by substantial evidence, shall be conclusive ...'"  Andrews v.

3   Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

4          Substantial evidence is "more than a mere scintilla," but "may be less than a

5   preponderance."  Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such

6   evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

7   Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

8   record can constitute substantial evidence, only those 'reasonably drawn from the record' will

9   suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

10  Although this court cannot substitute its discretion for that of the Commissioner, the court

11  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

12  evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS,

13  846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

14  court must consider both evidence that supports and evidence that detracts from the ALJ's

15  conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

16          "The ALJ is responsible for determining credibility, resolving conflicts in medical

17  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

18  Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

19  which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart,

20  278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

21  ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn

22  v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

23  2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

24  evidence that the ALJ did not discuss").

25          The court will not reverse the Commissioner's decision if it is based on harmless error,

26  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

27  ultimate nondisability determination.'"  Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006)

28  ////

3

1    (quoting <u>Stout v. Commissioner</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also <u>Burch v.</u>

2    <u>Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

3                                IV.  RELEVANT LAW

4           Supplemental Security Income is available for every eligible individual who is "disabled."

5    42 U.S.C. § 1381a.  Plaintiff is "disabled" if he is "'unable to engage in substantial gainful

6    activity due to a medically determinable physical or mental impairment . . ..'"  <u>Bowen v. Yuckert</u>,

7    482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

8           The Commissioner uses a five-step sequential evaluation process to determine whether an

9    applicant is disabled and entitled to benefits.  20 C.F.R. § 416.920(a)(4); <u>Barnhart v. Thomas</u>, 540

10   U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine

11   disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

12
13              Step one: Is the claimant engaging in substantial gainful activity?  If
                so, the claimant is not disabled.  If not, proceed to step two.
14
     20 C.F.R. § 416.920(a)(4)(i), (b).

15              Step two: Does the claimant have a "severe" impairment?  If so,
                proceed to step three.  If not, the claimant is not disabled.
16
     <u>Id.</u>, § 416.920(a)(4)(ii), (c).

17              Step three: Does the claimant's impairment or combination of
18              impairments meet or equal an impairment listed in 20 C.F.R., Pt.
                404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not,
19              proceed to step four.

     <u>Id.</u>, § 416.920(a)(4)(iii), (d).
20
21              Step four: Does the claimant's residual functional capacity make
                him capable of performing his past work?  If so, the claimant is not
22              disabled.  If not, proceed to step five.

     <u>Id.</u>, § 416.920(a)(4)(iv), (e), (f).
23
24              Step five: Does the claimant have the residual functional capacity
                perform any other work?  If so, the claimant is not disabled.  If not,
25              the claimant is disabled.

     <u>Id.</u>, § 416.920(a)(4)(v), (g).
26

27          The claimant bears the burden of proof in the first four steps of the sequential evaluation

28   process.  20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or

                                          4

disabled"); <u>Bowen</u>, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis,

the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can

engage in work that exists in significant numbers in the national economy."  <u>Hill v. Astrue</u>, 698

F.3d 1153, 1161 (9th Cir. 2012); <u>Bowen</u>, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since August 19, 2011, the application date (20 CFR 416.971 *et seq.*).

> 2. [Step 2] The claimant has the following severe impairments: cognitive disorder not otherwise specified (NOS) with history of limited cognitive functioning diagnoses (by history), borderline intellectual functioning, schizophrenia (by history), and history of drug and alcohol addiction disorder (DAA) in remission under treatment ([20] CFR 416.920(c)).

> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

> 4. [Preparation for Step 4]  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple, repetitive tasks (SRT), cannot perform complex or detailed instructions, cannot perform tasks that involve numbers or written work, less than occasional interaction with the public, occasional interaction with co-workers and supervisors, and no fast paced production work, e.g., competitive high stress jobs.

> 5. [Step 4] The claimant has no past relevant work (20 CFR 416.965).

> 6. [Step 5] The claimant was born on February 4, 1971and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

> 7. [Step 5, continued] The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

> 8. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

> 9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs

that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 19, 2011, the date the application was filed (20 CFR 416.920(g)).

AR 19-27.

As noted, the ALJ concluded that plaintiff was "not disabled" under

Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 27.

## VI.  ANALYSIS

Plaintiff argues that the ALJ erred by finding that plaintiff did not meet or equal ¶ 12.05C

of the Listing of Impairments ("Listings"), 20 C.F.R. Part 404, Subpt. P, App. 1.

Plaintiff meets or equals Listings ¶ 12.05C ("intellectual disability") if he has:

(1) significantly sub-average general intellectual functioning with deficits in adaptive functioning

initially manifested before age 22; (2) a valid "verbal, performance or full scale IQ" of 60 through

70; and (3) a physical or other mental impairment imposing an additional and significant work-

related limitation of function.  Listings § 12.05C; Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th

Cir. 2013) (same).

A. Intellectual functioning

The ALJ expressly found that plaintiff had "borderline intellectual functioning," and that

it was one of his "severe impairments."  AR 19.  Accordingly, the ALJ implicitly found that

plaintiff meets the first half of the first requirement of Listings ¶ 12.05C, in that he has

significantly sub-average general intellectual functioning.  No one challenges this finding on

appeal.

B. Adaptive functioning

1. Defining "deficits" and "adaptive functioning"

Although Listings ¶ 12.05C requires that the plaintiff have "deficits" in "adaptive

functioning," it neither defines what level of limitation or restriction gives a person a "deficit" in

this area, nor does it define what it means by "adaptive functioning."  There appears to be no

statute, regulation or binding case authority defining either term.  Definitions and standards for

1    "adaptive functioning" are found in several sources, including the Diagnostic and Statistical

2    Manual of the American Psychiatric Association ("DSM"), the version offered by plaintiff, and

3    case law.[5]

4            The Fifth Edition of the DSM, DSM-V, defines the "B Criterion" for "Intellectual

5    Disability" to be: "Deficits in adaptive functioning that result in failure to meet developmental

6    and sociocultural standards for personal independence and social responsibility."[6]  It goes on to

7    state: "Without ongoing support, the adaptive deficits limit functioning in one or more *activities*

8    *of daily life*, such as communication, social participation, and independent living, across multiple

9    environments, such as home, school, work, and community" (emphasis added).

10           Plaintiff suggests that the court should look at "circumstantial evidence" of such a deficit

11   _____

12   [5]  Much of plaintiff's briefing seems to assume that "deficits" in "adaptive functioning" is not a
     separate requirement from "sub-average intellectual functioning."  Accordingly, plaintiff focuses
13   principally on whether the evidence of intellectual functioning shows that it manifested before
     plaintiff turned 22 years old.  However, the court will not ignore the regulation's use of such a
14   specific, separate term, without authoritative interpretive guidance from the Commissioner, or
     case authority, none of which has been brought to the court's attention.  Moreover, it appears that
15   the terms are distinct, and coincide with (and may well be derived from) the definition of
     "intellectual disability" found in the American Association on Mental Retardation's ("AAMR")
16   *Mental Retardation: Definition, Classifications, and Systems of Support* (9th ed.1992) ("AAMR
     9th ed."), and the DSM:
17

18               The AAMR defines intellectual disability as characterized by *two*
                 *clinical elements*: (1) "significantly subaverage intellectual
19               functioning," (2) "existing concurrently with related limitations in
                 ... adaptive skill areas," which must "manifest [themselves] before
20               age 18." AAMR 9th ed., supra, at 1. The DSM-IV similarly defines
                 intellectual disability as consisting of (1) "significantly subaverage
21               general intellectual functioning," (2) "accompanied by significant
                 limitations in adaptive functioning," where "[t]he onset ... occurs[s]
22               before age 18 years...." DSM-IV, supra, at 41.

23   Smith v. Ryan, F.3d, 2016 WL 454337 at *23, 2016 U.S. App. LEXIS 1879 at *77 (9th Cir.
     2016) (emphasis added).  The current edition of the DSM defines intellectual disability as
24   consisting of "A. Deficits in intellectual functions . . . . B. Deficits in adaptive functioning . . .
     [and] C. Onset of intellectual *and* adaptive deficits during the developmental period."  DSM-V
25   ("Intellectual Disabilities") (see
     http://dsm.psychiatryonline.org/doi/full/10.1176/appi.books.9780890425596.dsm01#BCFIFJBB
26   (last visited by the court on March 23, 2016) (emphasis added).
     [6]  See
27   http://dsm.psychiatryonline.org/doi/full/10.1176/appi.books.9780890425596.dsm01#BCFIFJBB
     (last visited by the court on March 23, 2016).

28

                                                    7

1  – such as academic performance, special education classes, work history and dropping out of

2  school – as some courts have done.  See Campbell v. Astrue, 2011 WL 444783 at *17, 2011 U.S.

3  Dist. LEXIS 13742 at *51 (E.D. Cal. 2011) (Austin, M.J.) ("Courts have found that circumstantial

4  evidence can [imply] a deficit in adaptive functioning prior to the age of 22.  Examples of such

5  evidence include attendance in special education classes, dropping out of high school prior to

6  graduation, difficulties in reading, writing or math, and low skilled work history").[7]

7       Another possibility is to look for "'*significant* limitations in at least two of the following

8  skill areas: communication, self-care, home living, social/interpersonal skills, use of community

9  resources, self-direction, functional academic skills, work, leisure, health, and safety.'"  Taylor v.

10  Astrue, 2011 WL 4055243 at *14, 2011 U.S. Dist. LEXIS 102435 at *40 (E.D. Cal. 2011)

11  (Oberto, M.J.) (quoting DSM–IV–TR at 49) (emphasis added).[8]  According to the Seventh

12  Circuit, "[t]he term denotes inability to cope with the challenges of ordinary everyday life."

13  Novy v. Astrue, 497 F.3d 708, 710 (7th Cir. 2007) (citing American Psychiatric Association,

14  Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM-IV-TR) 42 (4th

15  ed. 2000)).

16       The court believes that the Listings themselves provide the best source for the definition

17  of "adaptive functioning."  The introduction to the Mental Disorders Listings (¶ 12.00) states:

18         Activities of daily living include *adaptive activities* such as
           cleaning, shopping, cooking, taking public transportation, paying
19         bills, maintaining a residence, caring appropriately for your

20

---

21  [7]  See also, Martinez v. Colvin, 2015 WL 4662620 at *6, 2015 U.S. Dist. LEXIS 102827 at *16
    (E.D. Cal. 2015) (Oberto, M.J.) ("[w]hen determining whether a claimant demonstrates deficits in
22  adaptive functioning, courts consider a variety of factors, including a claimant's poor academic
    performance, participation in special education, and work history"); Reyna v. Astrue, 2011 WL
23  2441906 at *5, 2011 U.S. Dist. LEXIS 61624 at 14 (E.D. Cal. 2011) (Snyder, M.J.) ("evidence of
    participation in special education classes permits an inference of an onset date for mental
24  retardation before age 22").
    [8]  One difficulty with this last method is that the Social Security Administration proposed
25  replacing "deficits" with "significant" deficits in this area, because "the proposed requirement for
    'significant' deficits in adaptive functioning is generally consistent with the diagnostic criteria
26  used in the clinical community."  See 75 Fed. Reg. 51336, 51339 ("Proposed Rules of the Social
    Security Administration/Revised Medical Criteria for Evaluating Mental Disorders").  However,
27  it appears that that change was not made, as the current rule requires only "deficits," not
    "significant" deficits.

28

1   grooming and hygiene, using telephones and directories, and using
2   a post office.

3   Listings ¶ 12.00C(1) (emphasis added).  This language indicates that the listed areas are among

4   the activities that make up adaptive functioning, although the "such as" language indicates that

5   there are other "adaptive" activities too.  Indeed, another part of the introduction to the Mental

6   Disorder Listings explains what those other adaptive activities are.  The regulation states that "a

7   loss of adaptive functioning" is:

8   manifested by difficulties in performing activities of daily living,
    maintaining social relationships, or maintaining concentration,
9   persistence, or pace.

10  Listings ¶ 12.00C(4).  Accordingly, "adaptive functioning" includes, at a minimum, (1) activities

11  of daily living, (2) maintaining social relationships, and (3) maintaining concentration,

12  persistence or pace.

13          2.  The ALJ's findings

14          The ALJ made no express finding regarding plaintiff's "adaptive functioning," nor

15  whether any deficits initially manifested before age 22.  However, the ALJ did make findings that

16  are *related* to the constituent parts of this requirement.  Specifically, the ALJ found that plaintiff

17  had "moderate difficulties" in social functioning and in maintaining concentration, persistence or

18  pace.  AR 20.  The ALJ also found that plaintiff had "mild restrictions" in activities of daily

19  living.  Id.

20          The problem here is that neither the ALJ, nor the Commissioner on appeal, correlates

21  these findings with the required finding of "deficit," for which the regulations specify no level of

22  severity.  The ALJ's finding of "moderate difficulties" (or even "mild restrictions") could mean

23  that plaintiff has a "deficit" in that area, or it might mean that he does not.  The ALJ does not

24  address the issue.

25          Moreover, the court cannot infer the ALJ's view from her overall determination that

26  plaintiff does not meet 12.05C.  The ALJ's determination there is expressly *not* based upon the

27  absence of a deficit in adaptive functioning, but rather is based solely upon her findings that

28  (1) plaintiff did not have valid qualifying IQ score, and (2) plaintiff did not have another

1    impairment imposing an additional and significant work-related limitation of function.  See

2    AR 21.  As discussed below, those findings are erroneous.  The error here is not harmless,

3    because as discussed above and further discussed below, there is substantial evidence that

4    plaintiff meets every other requirement of Listings ¶ 12.05C.  Accordingly, the ALJ's decision on

5    this matter could determine whether plaintiff is found to be disabled or not.

6                    C.  IQ from 60 through 70

7            On October 13, 2011, Ashley Zechender, Psy.D., and Andrew Mendonsa, Psy.D.,

8    completed a consultative evaluation of plaintiff.  AR 696-703 (Exh. 9F).  Plaintiff reported to the

9    evaluating doctors that he had a history of substance abuse that included alcohol abuse and

10   smoking methamphetamine.  AR 697.  Plaintiff reported that he had been sober for 16 years.  Id.

11   The evaluating doctors administered several tests to plaintiff, including the Weschler Adult

12   Intelligence Scale – Fourth Edition ("WAIS-IV").  AR 699-700.  From that test, the doctors'

13   opinion was that plaintiff's Full Scale IQ ("FSIQ") was 70, and his Verbal Comprehension Index

14   ("VCI") was 66.[9]

15           If credited as true, these opinions show that plaintiff satisfies the IQ portion of this

16   requirement.  Drs. Zechender and Mendonsa are examining physicians whose opinions were

17   specifically requested by the state agency as part of its evaluation of plaintiff.  Accordingly, the

18   ALJ could reject these opinions only for "clear and convincing reasons," or at a minimum, for

19   "specific and legitimate reasons."  Hill, 698 F.3d at 1159-60 ("In order to reject an examining

20   physician's opinion, the ALJ has to give clear and convincing reasons . . ..  Even if contradicted

21   by another doctor, the opinion of an examining doctor can be rejected only for specific and

22   legitimate reasons that are supported by substantial evidence in the record.") (internal quotation

23   marks omitted).

24   _____

25   [9]  Both scores are important because "[i]n cases where more than one IQ is customarily derived
     from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the
26   Wechsler series, we use the lowest of these in conjunction with 12.05."  Listings ¶ 12.00D(6)(c);
     Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 931-32 (9th Cir. 2014) (all portions of the IQ tests
27   "should be administered and reported in full," so that "the ALJ will have multiple scores –
     'verbal, performance, and full scale' – from which to 'use the lowest'").

28

1      The ALJ did reject these doctors' opinions, finding that plaintiff "does not have a valid

2   verbal, performance, or full scale IQ of 60 through 70."  AR 21.  In explanation, the ALJ stated

3   that he did not credit the IQ score, because "the claimant did not tell the evaluators about his

4   current history of substance use which could have affected his score."  AR 24.

5      There is no evidence in the record to support the ALJ's finding that plaintiff had an

6   undisclosed "current history of substance abuse."  At the time plaintiff's IQ test was given,

7   October 13, 2011, plaintiff had been released from prison a few months before, on August 12,

8   2011.  Plaintiff reported to the doctors who administered the IQ test that point he had been sober

9   for 16 years.  At the hearing, the ALJ seemed to agree that the parole records showed that at the

10  time of the IQ test, plaintiff was "clean and sober."[10]  The ALJ's own recitation of what "the

11  evidence shows" also clearly indicates that plaintiff did not start using drugs again until sometime

12  in March 2012, *after* the IQ test:

> The evidence shows the claimant had a problem with drug/alcohol abuse in March 2012.  *Records up to that point indicate he was doing well since his discharge from prison*.  In April 2012, he admits to using meth for the past month and he has significant weight loss consistent with his statement.

16  AR 25 (emphasis added).

17     Accordingly, the ALJ's reason for rejecting the IQ test is not convincing or legitimate.  If

18  the ALJ meant that plaintiff failed to disclose his *past* history of drug abuse, that is plainly belied

19  by the report itself, which states that plaintiff disclosed his past history of drug abuse.  See AR

20  697.[11]  If the ALJ meant that plaintiff had "current" or recent drug use when he took the IQ test,

21  ////

22  ////

23  _____

24  [10]  "Even when you were at parole outpatient it says here October 2011 you were smiling, laughing, doing well, denied hearing voices, good energy, good sleep, and this is September, October of 2011.  Of course, at that point you were somewhat clean and sober prior to the relapse."  AR 60.

26  [11]  "Substance Abuse History: Mr. Flores has been sober now for 16 years.  He reported he use[d] to be an alcoholic and would drink a six-pack daily.  He also would smoke methamphetamines every three weeks or so, for around three years.  He also smoked heroin every two to three weeks . . .."  AR 697.

1    there is no evidence for that in the record, and the ALJ's own findings refute such a finding.  See

2    AR 25.[12]

3          Plaintiff argues that the ALJ erred by rejecting the IQ score for the further reason that it

4    conflicted with plaintiff's GAF score of 71.  ECF No. 20-1 at 22-24.  The court does not read the

5    decision as rejecting the IQ score for that reason.  However, if this was a reason, it was plain error

6    because Drs. Zechender and Mendonsa were the ones who gave the GAF score to plaintiff, and

7    still found that his IQ scores were 70 and 66.  See AR 701.  Thus the ALJ could only use this

8    reason to reject the IQ score if she is substituting her own medical opinion for that of the doctors,

9    which she may not do.  See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) ("the

10   Hearing Examiner, who was not qualified as a medical expert, should not have gone outside the

11   record to medical textbooks for the purpose of making his own exploration and assessment as to

12   claimant's physical condition").

13         With no convincing (or even legitimate) reason to reject the doctors' opinions, the court

14   credits their opinions as true.[13]

15         D.  Other Impairments

16         The ALJ found that plaintiff has severe impairments at Step 2.  An impairment is "severe"

17   if it "significantly limits" a person's ability to perform work-related functions.  20 C.F.R.

18

19   [12]  Since there is no evidence of recent drug use prior to plaintiff's IQ test, the court need not
     consider the validity of the ALJ's medical conclusion that drug use would invalidate the IQ test.
20   Cf. Clark v. Astrue, 2012 WL 423635 at *5 n.5, 2012 U.S. Dist. LEXIS 15709 at *15 n.5 (E.D.
     Cal. 2012) (Hollows, M.J.); ("with a life long history of drug abuse, one can validly question
21   whether the lower score was performed on a drug clouded day"); Forsythe v. Astrue, 2012 WL
     217751 at *9, 2012 U.S. Dist. LEXIS 7744 at *26 (E.D. Cal. 2012) (Austin, M.J.) ("The record is
22   replete with references to Plaintiff's sobriety and past drug use.  In light of the foregoing
     discussion and this Court's findings regarding Plaintiff's IQ scores and the fact that IQ scores are
23   typically considered consistent throughout a person's lifetime, coupled with the significant
     circumstantial evidence of Plaintiff's subaverage intellectual functioning prior to the age of
24   twenty-two, the Commissioner's argument is not well taken"), adopted, but remanding for further
     proceedings, ECF No. 23, 1:10-cv-01515-AWI-GSA (March 15, 2012) (Ishii, J.).
25
26   [13]  Plaintiff argues that the ALJ further erred by failing to consider plaintiff's Verbal
     Comprehensive Index score of 66.  ECF No. 20-1 at 24-25.  The court reads the ALJ's decision as
27   rejecting both IQ scores: "the 'paragraph C' criteria of listing 12.05 are not met because the
     claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70."  AR 21.
28

§ 416.920(c) ("[i]f you do not have any impairment or combination of impairments which

significantly limits your physical or mental ability to do basic work activities, we will find that

you do not have a severe impairment"); Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987)

("an impairment imposes a significant work-related limitation of function when its effect on a

claimant's ability to perform basic work activities is more than slight or minimal").  Accordingly,

the ALJ implicitly found that plaintiff met the third requirement of Listings ¶ 12.05C.  See

Hutnick v. Colvin, 2014 WL 880360 at *5, 2014 U.S. Dist. LEXIS 28398 at *14 (E.D. Cal. 2014)

(Claire, M.J.) ("[a] finding of a severe impairment at the second step is a per se finding of an

'impairment imposing additional and significant work-related limitations of function' as defined

in the second prong of Listing 12.05(C)").[14]

    E. Remand

        Plaintiff argues that the court should remand for the immediate calculation and award of

benefits.  However, it is for the ALJ to determine in the first instance whether plaintiff satisfies

the requirements of Listings ¶ 12.05C.  See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015)

("the decision on disability rests with the ALJ and the Commissioner of the Social Security

Administration in the first instance, not with a district court").  Here, the ALJ failed to make a

determination of whether plaintiff had deficits in adaptive functioning, and whether those deficits

manifested before plaintiff turned 22 years old.  Accordingly, the matter will be remanded for

further proceedings.

## VII.  CONCLUSION

        The ALJ's decision is incomplete.  Specifically, the ALJ did not consider whether plaintiff

has deficits in adaptive functioning, manifesting before he turned 22 years old, sufficient to

---

[14]  It is not entirely clear from the ALJ's decision whether she separately found that plaintiff did not have an additional significant impairment.  See AR 21 ("the 'paragraph C' criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function") (emphasis added).  If that was a separate finding, it was clear error, as it directly contradicts the ALJ's finding that plaintiff has four separate "severe impairments."  See AR 19.  An impairment is "severe" only if it "significantly limits" a claimant's ability to do basic work activities.  20 C.F.R. § 416.920(c).

warrant a finding of disability under Listings ¶ 12.05C.

        For the reasons set forth above, IT IS HEREBY ORDERED that:

    1.  Plaintiff's motion for summary judgment (ECF No. 20), is GRANTED;

    2.  The Commissioner's cross-motion for summary judgment (ECF No. 24), is DENIED;

    3.  This matter is REMANDED to the Commissioner for further proceedings consistent with this opinion; and

    4.  The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 24, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

14